UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

JAMES RICE, Administrator Ad Prosequendum of
the Estate of BRIAN RICE, deceased,

               Plaintiff,

    -against-

KAWASAKI HEAVY INDUSTRIES, LTD.,
KAWASAKI MOTORS CORP., U.S.A., KAWASAKI
MOTORS MANUFACTURING CORP., U.S.A., and
CRAZY FREDDY'S MOTORSPORTS, INC.,

               Defendants.

_____X

CV-07-4031 (SJF)(ARL)

**OPINION & ORDER**

FEUERSTEIN, J.

On September 26, 2007, plaintiff James Rice ("plaintiff"), as administrator ad

prosequendum of the estate of Brian Rice, deceased, commenced this action, pursuant to this

Court's diversity jurisdiction under 28 U.S.C. § 1332(a), against Kawasaki Heavy Industries, Ltd.

("KHI"), Kawasaki Motors Corp., U.S.A. ("KMC"), Kawasaki Manufacturing Corp., U.S.A.

("KMM") (collectively, the "Kawasaki defendants") and Crazy Freddy's Motorsports, Inc.

("Crazy Freddy's"), asserting claims for negligence, failure to warn, strict product liability for

design and manufacture defects, breach of implied and express warranties, gross negligence,

wrongful death, and violations of New York General Business Law § 349. The Kawasaki

defendants[1] now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to

_____

[1] Although the motion was initially filed only on behalf of KMC and KMM because KHI
had not been served with the summons and complaint, by stipulation dated July 14, 2008, KHI
admitted service and joined in the motion of KMC and KMM. Thus, the motion is deemed to
have been filed on behalf of all of the Kawasaki defendants.

dismiss the complaint as against them.[2]  For the reasons stated herein, the Kawasaki defendant's motion is granted in part and denied in part.

I.      Background[3]

      A.      The Parties

Plaintiff is the father and duly appointed Administrator Ad Prosequendum of the Estate of Brian Rice ("Rice"), deceased. (Complaint [Compl.], ¶ 2).  Plaintiff is a resident of the County of Bergen, State of New Jersey. (Compl., ¶ 1).

KHI is a Japanese corporation with is principal place of business in Kobe, Hyogo, Japan, which does business in the State of New York. (Compl., ¶ 3).  KHI is the manufacturer, designer and international distributor of the 2006 Kawasaki ZX-6R Ninja 636 C6 motorcycle (the "Ninja motorcycle"). (Compl., ¶¶ 3, 6).

KMC is a California corporation which does business in the state of New York. (Compl., ¶ 4).  KMC is a manufacturer, designer and domestic distributor of the Ninja motorcycle. (Id.).

KMM is a Nebraska corporation which does business in the state of New York. (Compl.,

---

[2]  Crazy Freddy's moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.  However, prior to a determination on that motion, the parties advised the Court that plaintiff and Crazy Freddy's had reached a settlement of plaintiff's claims against that defendant and that they would be filing a stipulation of discontinuance of plaintiff's claims against Crazy Freddy's.  In light of the settlement, Crazy Freddy's motion for judgment on the pleadings is denied as moot without prejudice to renewal in the event the settlement is not consummated.

[3]  As is required on a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff.  They do not constitute findings of fact by this court.

¶ 5). KMM is a manufacturer, designer and domestic distributor of the Ninja motorcycle. (Compl., ¶ 5).

Crazy Freddy's is a New York corporation doing business in the State of New York with its principal place of business in the County of Suffolk, State of New York. (Compl., ¶ 6). At all relevant times, Crazy Freddy's was a seller and/or distributor of the Ninja motorcycle. (Id.).

### B. Factual Allegations

On or about April 24, 2006, Rice, who was then twenty (20) years old, purchased the subject Ninja motorcycle from Crazy Freddy's. (Compl., ¶ 10). Rice did not have a valid license to operate motorcycles at the time of purchase. (Id.). Crazy Freddy's sold the motorcycle to Rice with "no money down" and Rice was permitted to drive the vehicle from the lot "without any appreciable instruction as to the motorcycle." (Compl., ¶ 11).

On April 27, 2006, Rice was operating the subject motorcycle southbound on the Palisades Interstate Parkway (the "Palisades") in the Town of Closter, State of New Jersey. (Compl., ¶ 12). When Rice was approximately seven-tenths (0.7) of a mile south of Exit 2 of the Palisades, his motorcycle left the roadway and overturned, causing Rice to be thrown from the motorcycle. (Compl., ¶ 13). Rice ultimately died from the injuries he sustained as a result of the accident. (Compl., ¶ 14).

### C. Allegations in the Complaint

Plaintiff alleges that "Defendants design, manufacture and marketing strategy for the subject motorcycle was centered around speed and a light weight product, a deadly combination

3

even for experienced riders, without virtually any consideration given to safety concerns."

(Compl., ¶ 16).

Plaintiff further alleges:

> "While defendants touted the subject motorcycle as being 'quickest around the racetrack', being 'capable of cornering speeds previously unknown', having a 'compact lightweight design allowing it to maintain more cornering speed' and 'quicker lap times and even more worried looks on the competition's faces', they marketed and sold the said motorcycle towards the average rider or even the inexperienced rider, such as Brian Rice."

(Compl., ¶ 17).

D.    Procedural History

On September 26, 2007, plaintiff commenced this action against the Kawasaki defendants and Crazy Freddy's asserting causes of actions for negligence (the first cause of action as against the Kawasaki defendants; the second and third causes of action as against Crazy Freddy's), failure to warn (the fourth cause of action), strict product liability based upon both design defect and manufacture defect (the fifth cause of action), breach of express and implied warranties (the sixth and seventh causes of action, respectively), gross negligence (the eighth cause of action), wrongful death (the ninth cause of action), and violations of N.Y. Gen. Bus. Law § 349 (the tenth cause of action).

With respect to his first cause of action, plaintiff alleges, *inter alia*, that the Kawasaki defendants "negligently and carelessly designed and manufactured the subject motorcycle around two main goals-speed and a lightweight design-at the expense of safety considerations." (Compl., ¶ 30). In addition, plaintiff alleges that the Kawasaki defendants "negligently and

4

carelessly marketed and sold the subject motorcycle to the average rider or even the

inexperienced rider for the purpose of enhancing profits, despite knowledge that said motorcycle

was unreasonably dangerous for such riders." (Compl., ¶ 31).

With respect to his tenth cause of action, plaintiff alleges, *inter alia*:

> "That prior to and including April 27, 2006, the defendant engaged in a
> misleading and deceptive practice which was directed towards consumers,
> including the plaintiff's decedent, that sought to conceal the dangers inhering in
> the purchase of motor cycles such as the [subject Ninja motorcycle], the requisite
> degree of experience necessary for a purchaser to safely operate the said
> motorcycle and even the financing required to purchase the said motorcycle in
> order to make the 'quick sale' and enhance profits."

(Compl., ¶ 83).

## II.    Discussion

### A.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is

plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929

(2007). The pleading of specific facts is not required; rather a complaint need only give the

defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson

v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the

elements of a cause of action will not do. Factual allegations must be enough to raise a right to

relief above the speculative level, on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)." Bell Atlantic, 127 S.Ct. at 1959. Accordingly, the applicable

standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations

"plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). The Court must limit itself to the facts alleged in the complaint, which are accepted as true, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). A necessary prerequisite for the consideration of materials integral to the complaint on a Rule 12(b)(6) motion is that the "plaintiff[] rel[y] on the terms and effect of [the] document in drafting the complaint * * *; mere notice or possession is not enough.'" Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002)) (emphasis in original). "In most instances where [extrinsic materials are deemed integral to the complaint], the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim- was not attached to the complaint." Id. at 157. Moreover, a complaint does not incorporate an extraneous document by reference where it merely discusses that document or presents short quotations from it. United States v. International Longshoremen's Ass'n, 518 F.Supp.2d 422, 452 (E.D.N.Y. 2007)

(recognizing that a district court is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint; rather, it may, at its discretion, exclude the extraneous material). "Limited quotation does not constitute incorporation by reference." Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (quoting Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985)); see also Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ( holding that "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.")

Although plaintiff allegedly quotes from the Kawasaki defendants' marketing and advertising materials when he alleges that defendants "touted the subject motorcycle as being 'quickest around the racetrack', being 'capable of cornering speeds previously unknown', having a 'compact lightweight design allowing it to maintain more cornering speed' and 'quicker lap times and even more worried looks on the competition's faces'," (Compl., ¶ 17), those limited quotations are insufficient to incorporate those advertising and marketing materials into the complaint by reference. Moreover, there is no basis upon which to consider the other extraneous material submitted by the Kawasaki defendants on their motion. Rather than convert the Kawasaki defendants' Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, see Rule 12(d), I instead exercise my discretion to exclude the extraneous material submitted by the Kawasaki defendants on their motion and decide their motion on the complaint alone. See Friedl v. City of New York, 210 F.3d 79, 93 (2d Cir. 2000) (holding that when matters outside the pleadings are presented on a Rule 12(b)(6) motion, a district court must either exclude the extraneous material and decide the

7

motion on the complaint alone, or convert the motion to one for summary judgment pursuant to Rule 56 and afford all parties the opportunity to present supporting materials); International Longshoremen's Ass'n, 518 F.Supp.2d at 450 (recognizing that a district court is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint; rather, it may, at its discretion, exclude the extraneous material).

B.    Choice of Law[4]

The Kawasaki defendants contend that New Jersey law applies to plaintiffs' claims, whereas plaintiff contends that New York law applies. A real conflict of law exists between the product liability laws of New Jersey and New York insofar as New York courts permit separate claims for negligence, failure to warn and breach of implied warranty to be brought in conjunction with product liability claims for design and manufacturing defects, whereas the New Jersey Products Liability Act (the "NJPLA"), N.J. Stat. Ann. 2A:58C-1 to -11, subsumes common law product liability claims into one statutory cause of action for strict liability and does not allow separate negligence, breach of warranty or failure to warn claims for injuries caused by an allegedly defective product.

"A federal court sitting in diversity applies the choice of law rules of the forum state." Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999) (citing Klaxon Co. v. Stentor Electric

---

[4] Contrary to plaintiff's contention, the choice of law issue is not "properly the subject of a separate motion," (Memorandum of Law in Opposition to the Kawasaki Defendants' Motion to Dismiss [Mem. Opp.], p. 11 n. 3), and must necessarily be decided on this motion. Since plaintiff was afforded a full and fair opportunity to address this issue, as it was raised in the Kawasaki defendants' original motion papers, I will resolve this issue without further briefing.

Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed.2d 1477 (1941)). "In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdiction has the greater interest in having its law applied in the litigation." Padula v. Lilarn Properties Corp. 84 N.Y.2d 519, 521, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994). In determining the greater interest, courts must consider (1) what the significant contacts are and in which jurisdiction they are located, and (2) "whether the purpose of the law is to regulate conduct or allocate loss." Padula, 84 N.Y.2d at 521, 620 N.Y.S.2d 310.

As to the first inquiry concerning significant contacts, plaintiff is a domiciliary of New Jersey and the accident occurred in New Jersey. The Kawasaki defendants are all foreign corporations which do not have their principal places of business in either state, but which do business in both states. The only contact this case has to New York is that Crazy Freddy's sold the subject Ninja motorcycle to Rice in New York.[5]

With respect to the second inquiry, New York distinguishes between "conduct regulation" and "loss allocation" rules. Lee, 166 F.3d at 545. When the conflict involves rules that regulate conduct, New York law usually applies the law of the place of the tort ("*lex loci delicti*"). Padula, 84 N.Y.2d at 522, 620 N.Y.S.2d 310; see also Lee, 166 F.3d at 545. On the other hand, when the conflict involves rules that allocate loss, i.e. they prohibit, assign or limit liability after the tort occurs, the choice of law analysis is governed by the principles articulated in Neumeier v. Kuehner, 31 N.Y.2d 121, 128, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), which take into account the domicile of the parties, the conduct at issue, and the purposes of the

---

[5] Since plaintiff has settled its claims against Crazy Freddy's, the fact that it is a New York corporation with its principal place of business in New York and, thus, is domiciled in New York, is irrelevant to the instant analysis.

substantive law. Padula, 84 N.Y.2d at 522, 620 N.Y.S.2d 310; Lee, 166 F.3d at 545. Although

plaintiff's wrongful death claim involves a loss allocation rule, see, e.g. Miller v. Miller, 22

N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968) (wrongful death statute is loss-allocating),

plaintiff's claims for negligence, failure to warn, gross negligence, breach of express and implied

warranties, strict liability and deceptive practices involve conduct regulation rules. See, e.g.

Cacciola v. Selco Balers, Inc., 127 F.Supp.2d 175, 184 (E.D.N.Y. 2001) (causes of action

involving the duty and standard of care applicable to manufacturers, i.e. negligence and strict

products liability claims, are conduct regulating); Richardson v. Michelin North America, Inc.,

No. 95-CV-0760, 1997 WL 461994, at * 3 (W.D.N.Y. Aug. 8, 1997) (strict liability laws are

conduct regulating); Wheeler v. Standard Tool and Mfg. Co., 359 F.Supp. 298, 301 (S.D.N.Y.

1973), aff'd, 497 F.2d 897 (2d Cir. 1974) (strict liability claims are governed by the law of the

place of injury). Thus, the law of the jurisdiction where the tort occurred applies to plaintiff's

claims alleging negligence, gross negligence, failure to warn, breach of express and implied

warranties, strict liability and deceptive practices. See, e.g. Burke v. Stone & Webster, Inc., No.

03 Civ. 8694, 2006 WL 522604, at * 4 (S.D.N.Y. Mar. 2, 2006) (applying New Jersey law to the

plaintiff's products liability and negligence claims because that was the place were the accident

occurred and, thus, that was the state with the greatest interest in regulating behavior within its

borders).

  The Kawasaki defendants' allegedly tortious conduct occurred in New Jersey, because

that is the jurisdiction in which the motorcycle accident on the Palisades occurred, which is the

last event necessary to make those defendants potentially liable for the plaintiff's injuries. See,

e.g. Richardson, 1997 WL 461994, at * 3 (finding that the plaintiffs' strict liability claims were

governed by North Carolina law because that was the jurisdiction in which the last event necessary to make the defendants potentially liable for the plaintiffs' injuries, i.e., the accident on I-90, occurred). Thus, New Jersey law applies to plaintiff's claims alleging negligence, gross negligence, failure to warn, breach of express and implied warranties, strict liability and deceptive practices.[6]

### C.    The New Jersey Products Liability Act

The NJPLA defines "Product liability action" to mean "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. 2A:58-C-1(b)(3) and -8. "The language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products." Sinclair v. Merck & Co., Inc., 195 N.J. 51, 65, 948 A.2d 587

---

[6] Although the Kawasaki defendants seek dismissal of plaintiff's complaint "in its entirety" (Memorandum of Law in Support of the Kawasaki Defendants Motion to Dismiss the Complaint, p. 24), they fail to address plaintiff's wrongful death claim (ninth cause of action). Although the parties do not identify any conflict between New York and New Jersey law with respect to plaintiff's wrongful death claim, New Jersey law would apply to that claim as well. Under the Neumeier rule applicable to wrongful death claims when the parties are domiciled in different states and the accident occurred in one of the domiciliary states, see, e.g. Barkanic v. General Administration of Civil Aviation of the People's Republic of China, 923 F.2d 957, 962-963 (2d Cir. 1991) (recognizing that the Neumeier rules apply to wrong death claims), the law of the state where the accident occurred should be applied in the absence of special circumstances. See Caruolo v. John Crane, Inc., 226 F.3d 46, 57 (2d Cir. 2000) (applying the Neumeier rules to the loss allocation claims). Moreover, "[w]hen the extent of victim compensation is at issue, the plaintiff's domicile has an interest in applying its law because that forum is where the loss is felt * * *." Sheldon v. PHH Corp., 135 F.3d 848, 853-854 (2d Cir. 1998). Thus, under the applicable Neumeier rule, New Jersey law also applies to plaintiff's wrongful death claim since plaintiff is domiciled in New Jersey and that is where the accident occurred.

(2008) (quoting <u>In re Lead Paint Litigation</u>, 191 N.J. 405, 436-437, 924 A.2d 484 (2007)); <u>see</u>

<u>also</u> <u>Koruba v. American Honda Motor Co., Inc.</u>, 396 N.J.Super. 517, 935 A.2d 787 (N.J.Super.

A.D. 2007), <u>certification denied</u>, 194 N.J. 272, 944 A.2d 32 (2008) (holding that the NJPLA is

the exclusive remedy for personal injury claims arising out of product use and no longer

recognizes negligence or breach of implied warranty as a viable separate cause of action for harm

caused by a defective product or inadequate warning). Thus, plaintiff's negligence, failure to

warn, strict liability, breach of implied warranty and gross negligence claims (first through fifth,

seventh and eighth causes of action), all of which involve personal injury claims arising from use

of the subject Ninja motorcycle, are subsumed by the NJPLA. <u>See, e.g.</u> <u>Burke</u>, 2006 WL

522604, at * 7-8 (holding that the plaintiff's negligence claim was subsumed by the plaintiff's

products liability claims, which fell squarely within New Jersey's NJPLA). Accordingly,

plaintiff's first through fifth, seventh and eighth causes of action are dismissed. <u>See, e.g.</u> <u>West v.</u>

<u>American Honda Motor Co.</u>, No. Civ.A. 08-0700, 2008 WL 4104683, at * 3 (D.N.J. Aug. 28,

2008) (dismissing the plaintiff's complaint alleging claims for negligence, carelessness,

recklessness and breach of warranties arising from an all-terrain vehicle (ATV) accident, since

those claims were subsumed by the NJPLA and plaintiff did not seek a remedy under the NJPLA

in the complaint); <u>Canty v. Ever-Last Supply Co.</u>, 296 N.J.Super. 68, 79-80, 685 A.2d 1365

(N.J.Super. Law Div. 1996) (dismissing the plaintiffs' negligence claims arising from use of

lacquer floor sealant as superseded by the NJPLA).

Likewise, plaintiff's tenth cause of action, which alleges that defendants "engaged in a

misleading and deceptive practice" in violation of New York General Business Law ("NYGBL")

§ 349 is subsumed by the NJPLA. NYGBL is analogous to the New Jersey Consumer Fraud Act

("NJCFA"), § 56:8-1, *et seq.*, as both are consumer protection statutes. See, e.g. Batas v. Prudential Ins. Co. of America, 37 A.D.3d 320, 322-323, 831 N.Y.S.2d 371 (1st Dept. 2007). Courts have concluded that claims, *inter alia*, for consumer fraud pursuant to the NJCFA fall within the ambit of the NJPLA, to the extent such claims are based on harm caused to the plaintiff as a result of use of an allegedly defective product. Compare Sinclair, 195 N.J. at 66, 948 A.2d 587 (holding that the plaintiffs could not maintain a claim under the NJCFA, and that the sole source of their remedy was the NJPLA, when the heart of their case was the potential for harm caused by the defendant's drug and, thus, the claim was one for harm caused by a product); Lopienski v. Centocor, Inc., Civ. A. No. 07-4519, 2008 WL 2565065, at * 1 n. 2 (D.N.J. June 25, 2008)(holding that the plaintiff's claims for, *inter alia*, negligent misrepresentation, fraudulent misrepresentation, consumer fraud pursuant to the NJCFA and fraud by concealment fell within the NJPLA's ambit); Brown ex rel. Estate of Brown v. Philip Morris Inc., 228 F.Supp.2d 506, 517 (D.N.J. 2002)(holding that the plaintiff's fraud claims, which essentially recasted the plaintiff's product liability claims, fell within the ambit of the NJPLA); with Wendling v. Pfizer, Inc., No. A-1807-06T1, 2008 WL 833549 (N.J.Super. App. Div. Mar. 31, 2008) (unpublished opinion) (distinguishing claims under the NJCFA which allege false and misleading advertisement from those claiming that the product was defective or was not reasonably fit for its intended use because it failed to contain adequate warnings or instructions, and finding that in the former case, the claim was not subsumed by the NJPLA); Nafar v. Hollywood Tanning Systems, Inc., No. 06-CV-3826, 2007 WL 1101440, at * 5 (D.N.J. Apr. 10, 2007) (distinguishing claims for harm for personal injuries suffered from the use of the defendant's product from claims for economic harm caused by the defendant's failure to warn of the risks of its services).

Plaintiff's tenth cause of action alleges that defendants "engaged in a misleading and deceptive practice which was directed towards consumers * * * that sought to conceal the dangers inherent in the purchase of motorcycles such as the [subject Ninja], the requisite degree of experience necessary for a purchaser to safely operate the said motorcycle and even the financing required to purchase the said motorcycle * * *." (Compl., ¶ 83). Plaintiff further alleges that "[a]s a proximate result of the above-mentioned material misleading and deceptive practice, [Rice] was defrauded into purchasing a motorcycle that he was not capable of operating in a safe manner and subsequently sustaining injuries * * *." (Compl., ¶ 84). Clearly plaintiff's claim is one for harm caused by a product, i.e. the Ninja motorcycle, and, at its core, is a claim for personal injuries allegedly sustained as a result of defendants' failure to warn consumers of the dangers inherent in a Ninja motorcycle. Accordingly, plaintiff's tenth cause of action is really a product liability claim recast as a violation of a consumer protection statute and is, thus, subsumed by the NJPLA. See, e.g. McDarby v. Merck & Co., Inc., 401 N.J.Super. 10, 95-96, 949 A.2d 223 (N.J.Super. App. Div. 2008) (holding that the NJPLA subsumed the plaintiffs' NJCFA claims which alleged that the defendant marketed Vioxx fully aware of its cardiovascular risks but made misrepresentations, intentionally concealed or omitted material information and failed to be truthful while marketing the drug). Therefore, the branch of the Kawasaki defendants' motion seeking dismissal of plaintiff's tenth cause of action is granted.

D.    Leave to Amend Complaint

Plaintiff seeks leave to amend his complaint to plead claims under New Jersey law in the event this Court finds that New Jersey law applies in this case. (Mem. Opp., p. 11 n. 3).

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, if amendment would be futile, i.e. if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

### 1.  Claims under the NJPLA

N.J. Stat. Ann. 2A:58C-2 states, in pertinent part:

> "A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner."

"The focus in a strict liability case is on the product itself. * * * A prerequisite of any recovery under strict tort liability is the existence of a defective condition." Zaza v. Marquess and Nell, Inc., 144 N.J. 34, 48-49, 675 A.2d 620 (1996) (citations omitted); see also Myrlak v. Port Authority of New York and New Jersey, 157 N.J. 84, 97, 723 A.2d 45 (1999) (holding that although a plaintiff is relieved of proving fault in a strict liability case, he or she must nonetheless prove that the product was defective). "An inference of defectiveness may not be drawn from the mere fact that someone was injured. Liability should be imposed only when the

15

manufacturer is responsible for the defective condition." Zaza, 144 N.J. at 49, 675 A.2d 620.

"Defects are classified as design defects, manufacturing defects or inadequate warning defects."

Id.

            a.    Design-Defect Theory

"Generally, to succeed under a strict-liability design-defect theory [under New Jersey law], a plaintiff must prove that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused the injury to a reasonably foreseeable user." Jurado v. Western Gear Works, 131 N.J. 375, 385, 619 A.2d 1312 (1993)[7]; see also Myrlak, 157 N.J. at 97, 723 A.2d 45 (accord); Zaza, 144 N.J. at 49 (accord). Thus, to state a prima facie design defect case under the NJPLA, a plaintiff must first establish that the product is defective, i.e. that it is "not reasonably fit, suitable and safe for its intended purpose." N.J. Stat. Ann. 2A:58-C-2.

The only design defect alleged by the plaintiff in his complaint is the speed and lightweight nature of the Ninja motorcycle. (Compl., ¶16). "A motorcycle is intended to be a light, open, maneuverable, relatively unencumbered motor vehicle; the risks of driving such a vehicle are well known to those persons who choose to operate one." McWilliams v. Yamaha Motor Corp., U.S.A., 987 F.2d 200, 204 (3d Cir. 1993). Significantly, plaintiff does not allege

---

[7] Although Jurado was commenced prior to the effective date of the NJPLA, the Supreme Court of the State of New Jersey has held that the NJPLA does not "effect a doctrinal change in the common law" and generally "leaves unchanged the * * * theories under which a manufacturer * * * may be held strictly liable for harm caused by a product * * *." Jurado, 131 N.J. at 384 (citation omitted). In enacting the NJPLA, the New Jersey Legislature "intended that the common law should fill the interstices left by the terms of the Act." Id.

that the subject Ninja motorcycle was defective because it did not have certain safety features, compare, McWilliams, 987 F.2d 200 (plaintiff alleged that the subject motorcycle was defectively designed because it did not have a heavy duty crash bar), nor does he allege that the Ninja motorcycle failed to perform the function for which it was intended. The speed and lightweight nature of the Ninja motorcycle are performance features of the motorcycle which can be controlled by the user, rather than a defect. Thus, the Ninja motorcycle's speed and lightweight design are not, as a matter of law, design defects. See, e.g. Leslie v. United States, 986 F.Supp. 900, 909-910 (D.N.J. 1997), aff'd, 178 F.3d 1279 (3d Cir. 1999) (granting the defendant-manufacturer's motion to dismiss plaintiffs' design defect claim alleging that defendant's Winchester Black Talon hollow point bullets were "defectively designed in such a manner as to open into razor sharp edges and to severely rip through and mutilate body parts of the individual shot by such bullets," on the basis, inter alia, that plaintiffs failed to establish that the bullets were unsafe, unfit or unsuitable for their intended use within the meaning of the NJPLA since the bullets functioned precisely as intended); Marzullo v. Crosman Corp., 289 F.Supp.2d 1337, 1342 (M.D. Fla. 2003) (granting summary judgment dismissing the plaintiff's design defect claim alleging that the muzzle velocity of the defendant's gun enabled the BBS or pellets shot from the gun to reach speeds at which they can easily penetrate bones and vital organs on the basis that the muzzle velocity of the airgun was a function of the gun and, as a matter of law, did not constitute a design defect). Like the plaintiffs' argument in Marzullo, plaintiff's argument here

> "is analogous to arguing that a Boy Scout pocket knife is too sharp for its intended use or sharper than a reasonable scout would expect, or that a sports car is faster and more dangerous than a reasonable person would expect. These contentions

would defy logic, given the inherent nature of these products. Performance features which can be controlled by the user are not necessarily design defects or unreasonably dangerous conditions. Knives can be sharpened and sports cars can be driven as fast as the driver desires. * * * [T]he user controls the performance of these products. However, the risk that careless use of these products can cause injury, * * *, remains a risk inherent in the use of the product."

Marzullo, 289 F.Supp.2d at 1342-1343, n. 6.

Since plaintiff has not alleged a design defect in his complaint, any amendment to the complaint to assert a design defect claim under the NJPLA would be futile. Accordingly, plaintiff may not assert a design defect claim in any amended complaint served and filed by him.

### b. Failure to Warn Theory

"A failure to warn, or a failure to warn adequately, may constitute a defect in a product sufficient to support a cause of action in strict liability." Zaza, 144 N.J. at 57, 675 A.2d 620. "In a failure-to-warn strict liability case, the plaintiff does not allege that the design or structure of the product was defective. Rather, the defect is in the failure to warn unsuspecting users that the product can potentially cause injury." Id.; see also Coffman v. Keene Corp., 133 N.J. 581, 593-594, 628 A.2d 710 (1993) (holding that in a failure-to-warn case, the alleged product defect is the absence of a warning to unsuspecting users that the product can potentially cause injury). In cases based upon a failure to warn, "the duty to warn is premised on the notion that a product is defective absent an adequate warning for foreseeable users that the product can potentially cause injury." Clark v. Safety-Kleen Corp., 179 N.J. 318, 336, 845 A.2d 587 (2004) (internal quotations and citation omitted).

N.J. Stat. Ann. 2A:58C-4 provides defenses in failure to warn cases and states, in

18

pertinent part:

> In any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction, * * *. An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used, * * *.

The form that warnings may take "is dictated by all of the circumstances, and the adequacy of the chosen form is generally a question for the jury." Mathews v. University Loft Co., 387 N.J.Super. 349, 357, 903 A.2d 1120 (N.J.Super. App. Div. 2006). "However, before the adequacy issues arises, there first must be a duty to warn." Id.; see also James v. Bessemer Processing Co., Inc., 155 N.J. 279, 297-298, 714 A.2d 898 (1998). "[W]here the dangers or risks are obvious, no warning is necessary." Mathews, 387 N.J.Super. at 359, 903 A.2d at 1127. Under New Jersey law, "the obviousness of the danger is an absolute defense" to a plaintiff's failure to warn claim. Id. at 362-363, 903 A.2d at 1129. "Although a plaintiff's subjective knowledge of an obvious danger will not necessarily extinguish a defendant's duty to warn, [New Jersey] courts have been hesitant to extend this duty when the harm is overwhelmingly obvious." Henning v. Casa DiBertacci, Inc., No. A-4129-05T2, 2007 WL 1461170, at * 4 (N.J.Super. App. Div. May 21, 2007) (unpublished opinion). It is "not counter to the legislative intent of the NJPLA to dismiss 'obvious danger' claims, even if previous courts had shifted the 'obvious danger' argument to a fact questions to be argued by the defense at trial" prior to the statute's enactment. Henning, 2007 WL 1461170 at * 4.

19

The obviousness of the dangers of the speed and lightweight performance features inherent in the subject Ninja motorcycle to an inexperienced rider such as Rice cannot be ascertained at the pleadings stage. Nor can the adequacy of the Kawasaki defendants' warnings regarding those performance features of the Ninja motorcycle be ascertained at the pleadings stage. Accordingly, plaintiff is granted leave to amend his complaint to assert a failure to warn claim under the NJPLA. Plaintiff must file any amended complaint **within thirty (30) days from the date of this Order** or his complaint will be deemed dismissed with prejudice.

### c.    Manufacturing Defect

"[A] manufacturing defect under the [NJPLA] occurs when the product comes off the production line in a substandard condition based on the manufacturer's own standards or identical units that were made in accordance with the manufacturing specifications." Myrlak, 157 N.J. at 98, 723 A.2d 45. Since plaintiff fails to allege that the subject Ninja motorcycle came off the production line in a substandard condition, i.e. that it was not manufactured in accordance with its design specifications, and, indeed, does not even address the branch of the Kawasaki defendants' motion seeking dismissal of his manufacturing defect claim, any amendment to the complaint to assert a manufacturing defect claim under New Jersey law would be futile. Thus, plaintiff may not assert a manufacturing defect claim in his amended complaint.

### 2.    Express Warranty Claims

Express warranty claims under both New Jersey and New York law are governed by similar provisions of the Uniform Commercial Code. Both N.J. Stat. Ann. 12A:2-313(1) and

N.Y. U.C.C. § 2-313 provide, in pertinent part, that express warranties are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Since the parties have not identified any direct conflict between the express warranty laws of New York and New Jersey at this stage, it is unnecessary to ascertain which law applies to plaintiff's express warranty claim.[8]

Plaintiff alleges that "in using the [subject Ninja] motorcycle, [Rice] relied upon certain statements made by the defendants herein * * * that the motorcycle he purchased was safe and fit for the use as intended;" that "the defendants * * * knew or should have known that the motorcycle * * * was not safe and not fit for the use intended;" and that in reliance on defendants' statements Rice "purchased and operated the subject motorcycle, resulting directly in * * * fatal injuries * * *." (Compl., ¶¶ 62-64). Although, for the reasons set forth in denying plaintiff leave to amend his complaint to allege a design defect, plaintiff, as a matter of law, cannot show that the Ninja motorcycle was not "fit for the use as intended," plaintiff may be able to show that the Kawasaki defendants made various "affirmations of fact" regarding the safety of the motorcycle which created an express warranty. Although the Kawasaki defendants contend

---

[8] It bears noting that the Kawasaki defendants rely only on New York law with respect to plaintiff's express warranty claim.

21

that plaintiff cannot allege that the Ninja motorcycle "would be safe under all circumstances, even for Rice's misuse," there is no allegation in the complaint that Rice misused the subject motorcycle and, thus, the express warranty claim cannot be dismissed at the pleadings stage. Accordingly, the branch of the Kawasaki defendants' motion seeking dismissal of plaintiff's express warranty claim is denied.

III.    Conclusion

For the reasons stated herein, the branches of the Kawasaki defendants' motion to dismiss plaintiff's negligence, failure to warn, strict product liability, breach of implied warranty, gross negligence and violation of N.Y. Gen. Bus. Law § 349 claims is granted and those claims are dismissed; and the motion is otherwise denied. Plaintiff's application for leave to amend the complaint is granted to the extent that plaintiff may file an amended complaint asserting a failure to warn claim under the NJPLA within thirty (30) days from the date of this Order, and the application is otherwise denied. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on December 4, 2008, at 11:00 a.m. for a settlement and/or scheduling conference with authority or persons with authority to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: October 17, 2008
      Central Islip, N.Y.

22